UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
+---------------------------------+
| ART MANOS,                      |
|                                 |
|         Plaintiff,              |
|                                 |
|     v.                          |
|                                 |
| UNITED FOOD AND COMMERCIAL      |
| WORKERS INTERNATIONAL UNION, et |
| al.,                            |
|                                 |
|         Defendants.             |
+---------------------------------+
```

HONORABLE JOSEPH E. IRENAS

CIVIL ACTION NO. 13-5045
(JEI/JS)

**OPINION**

**APPEARANCES:**

HYDERALLY & ASSOCIATES, PC
By: Ty Hyderally, Esq.
    Francine Foner, Esq.
33 Plymouth Street
Suite 202
Montclair, New Jersey 07042
    Counsel for Plaintiff

O'BRIEN, BELLAND & BUSHINSKY, LLC
By: Steven J. Bushinsky, Esq.
    David F. Watkins, Esq.
1526 Berlin Road
Cherry Hill, New Jersey 08003
    Counsel for Defendants International United Food and
    Commercial Workers Union, United Food and Commercial
    Workers Union Local 152, and Daniel Konczyk

ATTORNEYS HARTMAN, CHARTERED
By: Katherine D. Hartman, Esq.
505 S. Lenola Road
Suite 121
Moorestown, New Jersey 08057
    Counsel for Defendant Mark Belland

**Irenas**, Senior District Judge:

This suit concerns tort and contract claims stemming from an employment dispute between Plaintiff Art Manos ("Plaintiff") and Defendants United Food and Commercial Workers Union Local 152 ("Employer"), United Food and Commercial Workers International Union ("International Union"), Dan Konczyk, and Mark Belland (collectively, "Defendants").  Presently before the Court is the Defendants' Motion to Stay Plaintiff's Complaint pending arbitration.  At present, an arbitration decision and award has been issued in the Defendants' favor, rendering any stay moot.  In light of the Court's limited subject-matter jurisdiction, this Court must dismiss Plaintiff's three state-law breach of contract claims and remand Plaintiff's eight other state-law claims to the Superior Court for lack of jurisdiction. Finally, the Court must retain jurisdiction over Plaintiff's ERISA claim, the sole claim brought under federal law.

## I.

The Court reviews only the essential facts and procedural history to resolve the pending motion and jurisdictional questions.

Plaintiff brings this lawsuit following his termination from employment on July 25, 2012.  (Compl. ¶ 125)  Plaintiff contends that his termination came about as a result of various

injuries and disabilities he sustained from incidents on two occasions in February 2007, one incident in July 2008, and one incident in September 2008.  (Id. ¶¶ 32, 34, 77, 86)  In particular, Plaintiff alleges that four parties are liable for his harm: Local 152 ("Employer"), their associated International Union, Daniel Koczyk, the Executive Assistant to the President of Employer, and Mark Belland, an attorney for Employer.

In total, Plaintiff asserts thirteen claims against these Defendants.  These claims include:

- Count I: Violation of the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1;
- Count II: Common law retaliation pursuant to *Pierce v. Ortho Pharma. Corp.*, 84 N.J. 58 (1980);
- Count III: Violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1;
- Count IV: Retaliation in violation of the NJLAD;
- Count V: Violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001;
- Count VI: Tortious interference with contractual relations;
- Count VII: Invasion of privacy;
- Count VIII: Invasion of privacy, public disclosure of private facts;
- Count IX: Invasion of privacy, placing one in a false light;
- Count X: Invasion of privacy, intrusion on seclusion;
- Count XI: Breach of express contract;
- Count XII: Breach of the implied covenant of good faith and fair dealing; and
- Count XIII: Breach of implied contract.

3

On July 12, 2013, Plaintiff filed his Complaint in the Superior Court, Atlantic County, docket number L 4820-13.  The Defendants were served with the Complaint and a summons on July 25, 2013.  (Notice of Removal ¶ 3)  Pursuant to 28 U.S.C. § 1441(a), the Defendants filed a notice of removal in this Court on August 23, 2013.  (Id.)  The Defendants allege that this Court had original jurisdiction over Plaintiff's claims under the doctrine of complete preemption subject to § 301 of the Labor Management Relations Act ("LMRA"), codified at 29 U.S.C. § 185.  (Notice of Removal ¶ 6)

Immediately following the notice of removal, the Defendants filed this Motion to Stay in lieu of a Responsive Pleading on August 30, 2013.  (Dkt. No. 2)  In their brief, the Defendants contended that Plaintiff's termination, and any grievance or harm stemming from that termination, was covered by a collective bargaining agreement ("CBA") that governed Plaintiff's employment with Employer.[1]  (Defs. Br. at 5)  The Defendants further indicated that the parties, in accordance with the CBA, had already begun to arbitrate Plaintiff's grievance, which was heard on August 27, 2013 and continued on September 10, 2013.  (Id. at 2-3)  Plaintiff has opposed the Defendants' motion,

---

[1] As the Defendants explained, Plaintiff was a member of the Federation of Agents and International Representatives ("FAIR"), a labor organization that entered into a collective bargaining agreement with Employer that allegedly controlled the "terms and conditions" of Plaintiff's employment. (Defs. Br. at 2-3)

contending that his claims were not preempted by the LMRA, and asserting that the Defendants were therefore not entitled to a stay in the case. (Pl.'s Opp. Br. at 1)

On February 25, 2014, the Defendants informed the Court that an arbitrator reached a decision in the grievance stemming from Plaintiff's termination. (Steven Bushinsky Ltr., Feb. 25, 2014, Dkt. No. 7) In his decision, the arbitrator found that Employer had just cause to terminate Plaintiff from employment. (Id. at Opinion & Award at 15) On March 25, Employer filed a petition with this Court for an Order confirming the arbitrator's award. *See United Food & Commercial Workers Local 152 v. Fed'n of Agents & Int'l Representative*, No. 14-cv-1878 (JEI/KMW), March 25, 2014, Dkt. No. 1.

In light of the arbitrator's Decision & Award, the Court now turns to resolution of the pending motion and the jurisdictional questions raised by Plaintiff in his opposition.


## II.

The Defendants contend that Plaintiff's state-law claims are subject to complete preemption under the LMRA, granting this Court jurisdiction over Plaintiff's claims as though they arose under federal law. Plaintiff argues that the LMRA does not extend to his claims, thereby preventing the Defendants from obtaining relief from this Court and effectively challenging

whether the Court has subject-matter jurisdiction over his claims.[2]

To resolve this threshold jurisdictional issue, the Court must determine whether complete preemption applies to the Plaintiff's claims. If not all claims are preempted, the Court must also consider whether it has other independent grounds for jurisdiction, including supplemental jurisdiction under § 1367(a). The Court begins by considering Plaintiff's ERISA claim before proceeding to the state-law claims.

## A.

Though the federal courts are courts of limited jurisdiction, 28 U.S.C. § 1331 vests the district courts with original jurisdiction of "all civil actions arising under the Constitution, laws, or treaties of the United States." ERISA, codified at 29 U.S.C. §§ 1101-1461, is a federal statute. Section 1132(a) empowers a participant or beneficiary to bring suit under this federal statute. Section 1132(e) grants exclusive jurisdiction to the federal courts except for certain actions arising under § 1132(a)(1)(B), in which case both federal and state courts retain concurrent jurisdiction.

---

[2] The Court could read Manos's Brief in Opposition to include a motion to remand to the Superior Court because the case was removed by the Defendants on the grounds that federal labor law properly governed the Complaint.

6

Under the federal removal statute, 28 U.S.C. § 1441(a), a defendant may remove a civil action from state court to the district court when the district court has original jurisdiction over the civil action and the district court geographically encompasses the state court where the action was originally filed. Plaintiff originally filed this federal law claim in Atlantic County Superior Court, and as a result, this Court properly has subject-matter jurisdiction over the ERISA claim.[3]

## B.

The Court now turns to determine whether it may properly exercise jurisdiction over Plaintiff's twelve state-law claims. Before considering the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a), the Court first addresses the doctrine of complete preemption under the LMRA, the grounds by which the Defendants removed this action. (Notice of Removal ¶ 6)

### 1.

Under the "well-pleaded complaint rule," subject-matter jurisdiction under 28 U.S.C. § 1331 may only be granted when a

_____

[3] Plaintiff's claim alleges that his benefits were terminated effective March 31, 2012, nearly four months before his termination from employment. (Compl. §§ 113, 125)  However, the exact nature of the Plaintiff's ERISA claim is not before the Court, and the Court therefore takes no position as to the merits of the claim other than to note that it arises under federal law.

federal question is presented on the face of the complaint.
*Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).
However, where the "pre-emptive force of a [federal] statute is
so extraordinary," a state-law claim may be converted into a
claim "stating a federal claim for purposes of the well-pleaded
complaint rule." *Id.* at 393 (internal quotation marks omitted)
(quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65
(1987)).  In such a circumstance, despite pleading a state-law
claim, the doctrine of complete preemption directs that any
state-law claims are considered to be claims arising under
federal law.  *Caterpillar*, 482 U.S. at 393.

Section 301(a) of the LMRA, 29 U.S.C. § 185(a), is one such
statute that imposes the doctrine of complete preemption.  *Id.*
Under the terms of the statute:

> Suits for violations of contracts between an
> employer and a labor organization representing
> employees in an industry affecting commerce as
> defined in this chapter, or between such labor
> organizations, may be brought in any district
> court of the United States having jurisdiction
> of the parties, without respect to the amount
> in controversy or without regard to the
> citizenship of the parties.

29 U.S.C. § 185(a).  The Supreme Court has held that this
statute "authorizes federal courts to fashion a body of federal
law for the enforcement of these collective bargaining
agreements." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S.
399, 403 (1988) (citation omitted).  The statute requires the

8

application of federal law "in order to ensure uniform interpretation of collective-bargaining agreements," which serves to promote uniformity and "consistent resolution" of labor-management disputes. *Id.* at 404.

Preemption under § 185(a) applies to state-law claims falling into two categories: claims that are "founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement." *Id.* at 410 n.10 (internal quotation mark omitted) (quoting *Caterpillar*, 482 U.S. at 394); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985). In other words, preemption does not apply to every state-law claim implicating § 185(a); for preemption to apply, a district court must determine that the plaintiff's state-law claim either rests upon rights created by the collective-bargaining agreement or rights determined under the interpretation of the agreement. *See Snyder v. Dietz & Watson, Inc.*, 837 F.Supp.2d 428, 438 (D.N.J. 2011); *see also Dickerson v. Palisades Med. Ctr., Inc.*, No. 13-cv-3382 (WJM), 2013 WL 5603927, at *3 (D.N.J. Oct. 9, 2013).

Though a collective-bargaining agreement and state law may protect similar rights, such overlap alone does not mandate preemption. *Reynolds v. TCM Sweeping, Inc.*, 340 F.Supp.2d 541, 547 (D.N.J. 2004). Instead, "[t]he key inquiry under the preemption analysis is whether an examination of the complaint

9

requires a factual inquiry into the actions and motivations of the parties relative to rights conferred by state law or relative to the rights of the parties under the collective bargaining agreement." *Id.* at 546-47 (citing *Patterson v. Exxon Mobil Corp.*, 262 F.Supp.2d 453, 461 (D.N.J. 2003)).

The Court first turns to Plaintiff's state-law contract claims to determine whether they are subject to preemption and the application of federal law.  The Court then addresses Plaintiff's tort claims, as well as those arising under New Jersey statutory and common law protections.


**2.**

In Counts XI, XII, and XIII, Plaintiff brings state-law claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of implied contract. Each of these claims is brought pursuant to New Jersey law.

Under certain circumstances, state-law contract rights may be preempted by § 185(a).  The Supreme Court directly addressed this matter in *Caterpillar*, where the individual plaintiffs sought to enforce state-law contract rights regarding individual employment contracts that were separate from the collective bargaining agreement in place between the employees and their employer.  *Caterpillar*, 482 U.S. at 396.  State-law breach of contract claims that concerned provisions of the collective

bargaining agreement would have been subject to complete preemption; however, because the breach of contract claims in *Caterpillar* concerned contracts independent from the collective bargaining agreement, such state-law claims were not preempted under the LMRA. *Id.* (citing *Allis-Chalmers*, 471 U.S. at 211)

However, in the instant case, Plaintiff brings three state-law contract claims expressly based upon the CBA governing his employment with the Defendants. Specifically, Plaintiff brings his claim for breach of contract in reliance upon the "contractual obligations to [Plaintiff] that were set forth in their Union Contract, their Handbook, and other employment documents." (Compl. ¶ 183)  Plaintiff's breach of the implied covenant of good faith alleges that the "Defendants had contractual obligations to [Plaintiff] as reflected above." (Id. ¶ 188)  Plaintiff's breach of implied contract alleges that the Defendants entered into other contracts, somehow modifying Plaintiff's employment relationship under the CBA.  (Id. ¶ 193) By expressly relying upon the CBA to assert these state-law contract claims, Plaintiff requires a court to inquire into the terms of the CBA regarding the Defendants' contractual obligations with Plaintiff.  This demands preemption and grants this Court subject-matter jurisdiction.

When a court determines that a state-law claim is subject to preemption and arises under federal law, the court may either

11

treat the claim as a LMRA claim or dismiss the claim as preempted. *Allis-Chalmers*, 471 U.S. at 220; *see also Pickett v. Ocean-Monmouth Legal Svcs., Inc.*, No. 11-cv-6980 (AET), 2012 WL 254132, at *2 (D.N.J. Jan. 27, 2012) (dismissing preempted LMRA claims); *Carluccio v. Parsons Inspection & Maint. Corp.*, No. 06-cv-4354 (JLL), 2007 WL 1231758, at *4 (D.N.J. Apr. 4, 2007) (same). Here, the parties have already arbitrated their dispute, and the Decision & Award of the arbitrator demonstrates that Employer had just cause to terminate Plaintiff. (Bushinsky Ltr., Feb. 25, 2014, Decision & Award at 15) To ensure the uniformity of federal labor law, as directed by *Allis-Chalmers*, this Court will dismiss Plaintiff's preempted claims asserted in Counts XI, XII, and XIII.[4]

### 3.

Plaintiff asserts eight other state-law causes of action, none of which are subject to the LMRA doctrine of complete

---

[4] 9 U.S.C. §§ 10-11 permit the Plaintiff to vacate, modify, or correct an arbitration award under the provisions of those statutes. The Defendants contend that the time to bring such a challenge has now expired, (see Bushinsky Ltr., Feb. 25, 2014, at 1), however the Court takes no position on the merits of this assertion. Dismissal of the preempted breach of contract claims does not preclude Plaintiff from pursuing such relief, if appropriate. Nor does it implicate the Plaintiff's ERISA claim, which was not addressed in the arbitrator's Decision & Award. (Id.)

In addition, the fact that Employer filed a petition to confirm the arbitration award on March 25, 2014 has no bearing on dismissal of Plaintiff's claims. *See United Food and Commercial Workers Local 152 v. Fed'n of Agents and Int'l Representative*, No. 14-cv-1878 (JEI/KMW), Dkt. No. 1. Such petition would be governed by 9 U.S.C. § 9 and other applicable statutes, unrelated to Plaintiff's state-law claims presently at issue.

preemption.  The Court briefly addresses each claim to demonstrate that complete preemption does not apply.

Counts I and II assert state-law claims protecting whistleblowers.  Specifically, Count I alleges a violation of CEPA, and Count II alleges that Plaintiff's termination was in violation of the retaliation protections articulated in *Pierce v. Ortho Pharm. Corp.*, 84 N.J. 58 (1980).  Plaintiff's right to relief as a whistleblower or victim of wrongful discharge does not concern an inquiry into the terms of the CBA, which is devoid of provisions regarding whistleblowers and retaliation protection.  Rather, to determine the Plaintiff's rights under CEPA and *Pierce*, a court must inquire into other factual circumstances, including an alleged March 30, 2012 meeting with Defendants Belland and Konczyk.  (E.g. Compl. ¶¶ 64-67, 132-38, 146-48)  As a result, complete preemption does not apply to these CEPA and *Pierce* retaliation claims.

Similarly, Counts III and IV allege violations of the NJLAD.  Count III alleges that Defendants discriminated against Plaintiff due to his handicap or disability, and Count IV alleges that Defendants retaliated against Plaintiff for complaining about discrimination resulting from his handicap or disability.  (Id. ¶¶ 151, 155)  The NJLAD is "remedial legislation" that seeks to "eradicate[] the cancer of discrimination."  *Quinlan v. Curtiss-Wright Corp.*, 204 N.J. 239,

13

259-60 (2010) (citations omitted).  Here again, the preemption analysis demands that the Court determine whether the claims require an inquiry into the facts and motivations of the parties relative to rights conferred by state law or rights conferred by the CBA.  *Reynolds*, 340 F.Supp.2d at 546-47.  The CBA explains that the parties agreed "that no person covered by this Agreement shall be discriminated against because of age, sex, race, religion, national origin, political affiliation, or sexual orientation." (CBA, Art. 8, § A)  This provision of the CBA omits handicap and disability discrimination, which are protected under the NJLAD and asserted by Plaintiff in Counts III and IV.[5]  To resolve these NJLAD claims, a court must inquire into the facts and motivations of the parties relative to rights conferred by state law, not under the CBA, and preemption is therefore inapplicable to Plaintiff's NJLAD claims.

Count VI asserts a claim for tortious interference with contractual relations.  This tort claim concerns "inducing a third person not to continue a prospective relation." *MacDougall v. Weichert*, 144 N.J. 380, 403 (1996) (internal quotation marks omitted).  No language concerning prospective contractual relations appears in the CBA.  Moreover, the

---

[5] Specifically, N.J.S.A. 10:5-12 explains that it "shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination: (a) [f]or an employer, because of the . . . disability . . . of any individual . . . to discharge . . . from employment such individual or to discriminate against such individual . . . ."

substance of Plaintiff's claim concerns his assertion that the
Defendants interfered with his right to retain counsel of his
own choosing for a variety of personal injury actions, both
related to and separate from his employment.  (See, e.g., Compl.
¶¶ 79, 82, 98-99; see also Pl.'s Opp'n Br. at 8)  Inquiry into
these factual circumstances concerns rights under state law and
has no relationship with the terms of the CBA.  Plaintiff's
claim for tortious interference with contractual relations is
therefore not subject to complete preemption.

Finally, Counts VII, VIII, IX, and X assert four state-law
privacy tort claims against the Defendants.  New Jersey law
recognizes four distinct types of privacy tort, which are bound
by the common thread that "each represents an interference with
the right of the plaintiff to be let alone." *Rumbauskas*, 138
N.J. 173, 179-80 (1994) (quoting *Canessa v. J.I. Kislack, Inc.*,
97 N.J. Super. 327, 334 (Law Div. 1967)).  Here again, the CBA
lacks any term concerning the Plaintiff's right to privacy.
Instead, factual inquiry into the actions and motivations of the
parties would focus solely on rights conferred by state law
rather than under the CBA.  Plaintiff's privacy tort claims are
therefore not subject to complete preemption.

As a result of this preemption inquiry, the Court concludes
that it must dismiss the Plaintiff's preempted state-law
contract claims asserted in Counts XI, XII, and XIII.  Because

complete preemption does not apply to the remaining state-law claims, the Court now turns to supplemental jurisdiction to determine whether it may exercise subject-matter jurisdiction over Plaintiff's remaining claims.[6]

### C.

The supplemental jurisdiction of the federal courts is codified at 28 U.S.C. § 1367.  In actions in which a district court has original jurisdiction, § 1367(a) grants the court supplemental jurisdiction over related claims that are part of the same case or controversy.  However, § 1367(c) provides that district courts may decline to exercise supplemental jurisdiction under subsection (a) if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Here, the Court cannot apply § 1367(c)(3) because it has not dismissed Plaintiff's ERISA claim.  In addition, Plaintiff's state-law claims concerning CEPA, *Pierce*, NJLAD, and various

---

[6] There is no indication that the Court's diversity jurisdiction, 28 U.S.C. § 1332, applies to Plaintiff's claims.

tort claims are longstanding claims under New Jersey state law, rendering § 1367(c)(1) inappropriate.  Similarly, no exceptional circumstance, like a pending trial in another venue, directs the application of § 1367(c)(4).  However, Plaintiff's state-law claims concern wholly different rights and raise a substantially different factual inquiry than Plaintiff's ERISA claim, giving grounds for the application of § 1367(c)(2).

The standard for determining that state law claims "substantially predominate" over federal law claims comes from the Supreme Court in *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966).  *See Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 789 (3d Cir. 1995).  The Third Circuit instructs that a district court's decline of supplemental jurisdiction under § 1367(c)(2) should "track the Supreme Court's explication of that standard in *Gibbs*."  *Id.*  Under *Gibbs*, "if it appears that state claims substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals."  *Gibbs*, 383 U.S. at 726-27.  As the Third Circuit explained, "[t]his will normally be the case only where . . . permitting litigation of all claims in the district court can accurately be described as allowing a federal tail to wag what is in substance a state dog."  *Borough of W. Mifflin*, 45 F.3d at 789.

17

Reviewing the Plaintiff's remaining state-law claims reveals that these claims require inquiry into factual proofs that are wholly separate from Plaintiff's entitlement to benefits under ERISA.  Plaintiff's ERISA claim requires inquiry into the allegation that Plaintiff's benefits were terminated effective March 31, 2012 despite his termination from employment on July 25, 2012.  (Compl. ¶¶ 113, 125)  On the other hand, the state-law claims concerning Plaintiff's alleged invasion of privacy, inability to select a lawyer of his choosing, whistleblower protections, and disability discrimination focus on the actions of the Defendants on a number of other occasions. For example, Plaintiff alleges that the topics discussed at a March 30, 2012 meeting, were "invasive of [Plaintiff's] privacy" and in violation of various laws protecting his privacy. (Compl. ¶¶ 65-70)  This meeting concerned the Plaintiff's injuries and lawsuits dating back to 2007, allegedly the source of Plaintiff's disability, as well as the root of various lawsuits implicated in Plaintiff's NJLAD and tortious interference claims.  (Id. ¶¶32-34, 40-41, 56)

In view of the state-law claims and the underlying events related to those claims, much of the evidence that Plaintiff would seek to introduce would not be relevant to his federal ERISA claim.  Rather, litigation of Plaintiff's ERISA claim centers solely on whether benefits due to Plaintiff were paid,

while litigation of Plaintiff's state-law claims requires inquiry into the substance of the March 30, 2012 meeting and Plaintiff's disabilities and lawsuits from 2007 through 2012. This is not a case where the same acts allegedly violate parallel or related federal and state-law claims.

As a result, the Plaintiff's remaining state-law claims substantially predominate over Plaintiff's single federal ERISA claim.  Exercising supplemental jurisdiction to consider eight state-law claims surrounding wholly different factual proofs would not promote judicial efficiency, and the New Jersey state courts (where this action was initially filed) offer an appropriate venue to consider such state-law claims and their factual proofs.  As a result, this Court will remand Plaintiff's Counts I, II, III, IV, VI, VII, VIII, and IX to the Superior Court, Atlantic County, Law Division.[7]

**IV.**

Based on the foregoing, the Court must dismiss Plaintiff's state-law contract claims alleged in Counts XI, XII, and XIII because they are subject to the doctrine of complete preemption

---

[7] It is immaterial whether the Court interprets Manos's opposition as a Motion to Remand or makes this ruling *sua sponte* because the Federal Rules of Civil Procedure direct the Court to dismiss an action "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter."  Fed. R. Civ. P. 12(h)(3); *see also* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

under the LMRA.  The Court will remand the state-law claims alleged in Counts I, II, III, IV, VI, VII, VIII, and IX because these claims are not subject to complete preemption, nor would the exercise of supplemental jurisdiction be appropriate in light of 28 U.S.C. § 1367(c)(2).  Finally, the Court will retain jurisdiction over Plaintiff's ERISA claim alleged in Count V and resolve the currently pending Motion to Stay as moot in light of the December 10 issuance of the arbitrator's Decision & Award.


Date: 3-28-14

s/ Joseph E. Irenas
**Joseph E. Irenas, S.U.S.D.J.**